**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: Subpoena Issued In: *In re: Zantac (Ranitidine) Products Liability Litigation,* Case No. 9:20-md-02924-RLR (S.D. Fla.) | No. 1:21-mc-00698-KPF |
| | Judge Katherine Polk Failla |
| **Michael Bretholz,** *Petitioner*, | |
| **v.** | |
| **GlaxoSmithKline LLC** *Respondent*. | |

\* \* \* \* \*

*PERTAINS TO SUBPOENA ISSUED IN:*

\* \* \* \* \*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In Re: Zantac (Ranitidine) Products Liability Litigation | MDL No. 2924 20-MD-2924 |
| | Judge Robin L. Rosenberg Magistrate Judge Bruce E. Reinhart |

---

**MEMORANDUM OF LAW IN SUPPORT OF GLAXOSMITHKLINE LLC'S MOTION TO COMPEL MICHAEL BRETHOLZ'S COMPLIANCE WITH ITS SUBPOENA AND OPPOSITION TO MR. BRETHOLZ'S MOTION TO QUASH**

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

    *Valisure's Business Model* ................................................................................................ 2

    *Bretholz and Valisure* ...................................................................................................... 5

    *Valisure's Testing and Zantac Citizen Petition* ............................................................. 6

ARGUMENT........................................................................................................................ 10

    I.   THE DOCUMENTS SOUGHT BY GSK'S SUBPOENA ARE RELEVANT. ................... 11

    II.  COMPLIANCE WITH GSK'S SUBPOENA IS NOT AN UNDUE BURDEN ON
        PETITIONER. ......................................................................................................... 13

    III. THE TIME LIMIT ON GSK'S SUBPOENA IS REASONABLE. ...................................... 14

    IV. GSK'S SUBPOENA DOES NOT VIOLATE RULE 45(C)(2)(A)'S 100-MILE RULE....... 15

    V.  ANY LEGITIMATE INTEREST BRETHOLZ HAS IN CONFIDENTIALITY CAN BE
       ADEQUATELY PROTECTED BY THE ZANTAC MDL'S CONFIDENTIALITY ORDER.
       ..................................................................................................................... 16

    VI. PETITIONER'S PRIVILEGE ASSERTIONS ARE PREMATURE..................................... 17

CONCLUSION..................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

Federal Rule of Civil Procedure 26 ............................................................................ 11

Federal Rule of Civil Procedure 45 .......................................................... 11, 13, 14, 15, 17, 19, 20

*Agerbrink v. Model Serv. LLC*, No. 14CIV7841JPOJCF, 2017 WL 933095 (S.D.N.Y. Mar. 8, 2017) ............................................................................................................................ 13

*Baptiste v. Centers, Inc*., No. 5:13-CV-71-OC-22PRL, 2013 WL 3196758 (M.D. Fla. June 21, 2013) ............................................................................................................................ 11

*Cartessa Aesthetics LLC v. Aesthetics Biomedical Inc*., No. CV-19-05827-PHX-DWL, 2020 WL 5846603 (D. Ariz. Oct. 1, 2020) .............................................................................. 15

*CresCom Bank v. Terry*, 269 F. Supp. 3d 708 (D.S.C. 2017)........................................... 15

*Harrington v. Freedom of Information Comm'n*, 323 Conn. 1, 12, 144 A.3d 405 (2016).......... 19

*Indep. Mktg. Grp., Inc. v. Keen*, No. 3:11-CV-447-J-25MCR, 2012 WL 512948 (M.D. Fla. Feb. 16, 2012) ..................................................................................................................... 11

*Plouffe v. GEICO Gen. Ins. Co*., No. 16-25145-CIV, 2017 WL 7796323 (S.D. Fla. Aug. 8, 2017) ........................................................................................................................... 16

*Reinsdorf v. Skechers U.S.A., Inc*., 296 F.R.D. 604 (C.D. Cal. 2013))......................... 13

*Skorman v. Hovnanian of Fla., Inc*., 382 So. 2d 1376 (Fla. 4th DCA 1980) .................... 18

*Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379, 581 N.E.2d 1055 (1991).......... 18

*State v. Kosuda-Bigazzi*, 335 Conn. 327, 343, 250 A.3d 617 (2020) ............................... 19

*Ullmann v. State*, 230 Conn. 698, 714, 647 A.2d 324 (1994)......................................... 18

*Williams v. City of Birmingham*, 323 F. Supp. 3d 1324 (N.D. Ala. 2018) ....................... 11

Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. 2021 update)...................... 11

## INTRODUCTION

Petitioner Michael Bretholz is an investor and consultant for Valisure pharmacy and a key figure behind the Zantac litigation.  Bretholz and his brother[1] (another Valisure investor) worked with Valisure and third parties, including a plaintiffs' class action attorney, to coordinate testing of Zantac (ranitidine) that produced artificially high levels of NDMA[2] — by using a method the U.S. Food & Drug Administration (FDA) said was "not suitable for testing ranitidine."[3]  This was done to support the citizen petition that Valisure submitted to the FDA asking it to pull Zantac from the market, which in turn was used by Valisure to raise millions of dollars in investments, far more than it had ever raised before.  While nominally a non-party, Valisure — and with it, Bretholz — coordinated the faulty testing that set the wheels in motion for what has become one of the largest multidistrict litigations in history.  Valisure's faulty testing and citizen petition are key parts of Plaintiffs' claim of causation in the Zantac MDL, and GSK is entitled to discovery, both as to the substance of Valisure's testing and to related potential bias/credibility issues underlying Valisure's reported results, evidence of which may exclusively be in the possession of Bretholz.  GSK is entitled to discover that evidence from Valisure itself **and** from Bretholz as a

---

[1] To clarify, any references to "Bretholz" refer solely to Petitioner Michael Bretholz and not his also involved brother, Dr. Adam Bretholz.

[2] N-Nitrosodimethylamine (NDMA) is an organic compound that is present in many foods (e.g., smoked or cured meat, cheese, and milk) and drinking water, and is also formed in the human body.  NDMA has also been detected at trace levels as an impurity in ranitidine.  NDMA is classified as a probable human carcinogen based on animal studies, but has not been shown to cause cancer in humans.

[3] *See* U.S. FOOD & DRUG ADMINISTRATION, *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (last visited 09/17/2021), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine (Oct. 2, 2019 update explaining that "the testing method used by a third-party laboratory [Valisure] uses higher temperatures [which] generated very high levels of NDMA from ranitidine products because of the test procedure. . . . ***That method is not suitable for testing ranitidine*** because heating the sample generates NDMA." (emphasis added)).

key Valisure funder and behind-the-scenes consultant.

Bretholz argues that this Court should quash Defendant GlaxoSmithKline LLC's (GSK) subpoena because: (i) he represents Valisure as its attorney, and (ii) compliance would be an undue burden. This claim is misguided and wholly premature. First, Bretholz's claim that he is not only an investor but also Valisure's attorney (despite being employed full-time by another business and not practicing law at a firm) should not be taken at face value. In any event, a potential attorney-client relationship does not render all relevant documents in his possession privileged. Bretholz has yet to produce a privilege log identifying the specific documents he claims are privileged along with a basis for each privilege claim. Once he produces a privilege log, Bretholz and GSK can resolve specific privilege disputes, with or without court intervention. Simply put, Bretholz cannot secure blanket immunity from discovery with the assertion that he is Valisure's lawyer. GSK respectfully asks this Court to deny Bretholz's motion to quash and grant GSK's motion to compel him to simply produce responsive documents from his Gmail, online storage locations, hard copy documents, and personal devices. GSK has properly designated the format and offered to cover agreed upon e-discovery technology vendor costs associated with producing documents in compliance with the subpoena. He should provide a privilege log for all documents he contends are privileged.

**BACKGROUND**

*Valisure's Business Model*

Valisure is an online pharmacy based in New Haven, Connecticut. It launched in 2018, winning a local entrepreneur award as the Pre-Revenue Venture of the Year.[4] Valisure billed itself

---

[4] Valisure, *Valisure Wins Pre-Revenue Venture Of The Year In 2018 CT Entrepreneur Awards* (Cision PR Newswire Apr. 26, 2018), https://www.prnewswire.com/news-releases/valisure-wins-pre-revenue-venture-of-the-year-in-2018-ct-entrepreneur-awards-300637428.html.

as the "first digital pharmacy to chemically validate medications for quality and consistency."[5] While Valisure publicly suggests that it tests every batch of medicine for impurities in order to serve its customers — or as a "Good Samaritan" as Bretholz argues[6] — there is much more to its business model than that.

For example, months after launching, several Valisure employees and officers and one third party co-author published an article based on their research, claiming that rapid-release acetaminophen gel caps actually dissolve slower than regular acetaminophen gel caps.[7] And just three days later (on the same day that Valisure issued a press release about its findings)[8] a class action lawsuit was filed against a manufacturer of rapid-release acetaminophen gel caps.[9] Court filings show that Valisure and the plaintiffs' attorney had been in communications for months before the study was published[10] — communications that the plaintiffs tried unsuccessfully to keep

---

[5] Valisure, *Valisure Is Launching The First Digital Pharmacy To Chemically Validate Medications* (Cision PR Newswire May 7, 2018), https://www.prnewswire.com/news-releases/valisure-is-launching-the-first-digital-pharmacy-to-chemically-validate-medications-300643313.html.

[6] Memorandum of Law in Support of Non-Party Michael Bretholz's Motion to Quash Subpoena and for Reimbursement or, In the Alternative, for a Protective Order at 4, Docket No. 7 (Sept. 1, 2021) ("Bretholz Brief").

[7] Kaury Kucera et al., *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, KENKYU OPEN ACCESS PUBLISHERS, Dec. 11, 2018, https://www.kenkyugroup.org/images/articles/cbd4b1c4680cdfd6e16e3f8ecdc39b6b.pdf.

[8] Valisure, *Scientific Study Reports That On Average Rapid-Release Acetaminophen Gelcaps Dissolve Slower Than Standard-Release Tablets* (Cision PR Newswire Nov. 15, 2018), https://www.prnewswire.com/news-releases/scientific-study-reports-that-on-average-rapid-release-acetaminophen-gelcaps-dissolve-slower-than-standard-release-tablets-300750824.html.

[9] *See* Class Action Complaint, *Bailey v. Rite Aid Corporation*, Docket No. 1, No. 3:18-cv-6926 (N.D. Cal. Nov. 15, 2018).

[10] *See* Letter Brief at 2, *Bailey v. Rite Aid Corporation*, Docket No. 94, No. 3:18-cv-6926 (N.D. Cal. Oct. 20, 2020).

from the defendant.[11]  The court in that case noted that "the study [by Valisure] may not have been independent, given the possible relationship between the authors of the study and [plaintiff's] counsel."[12]

In early 2019, Valisure announced that it was on the lookout for certain chemicals, including NDMA, in medications.[13]  That same year, Valisure announced that it had detected high levels of DMF (N,N-Dimethylformamide) in the blood pressure medication Valsartan[14] and NDMA in Zantac.[15]  In 2020, it announced that it found NDMA in the drug Metformin,[16] and in 2021, that it found benzene in various hand sanitizers[17] and sunscreens.[18]  Valisure filed citizen petitions with the FDA for each of these findings.[19]  A significant volume of litigation has arisen around each of these products.

---

[11] *See* Order, *Bailey v. Rite Aid Corporation*, Docket No. 104, 2020 WL 6789435, No. 3:18-cv-6926 (N.D. Cal. Nov. 18, 2020).

[12] *See Order at *2, Bailey v. Rite Aid Corporation*, Docket No. 104, 2020 WL 6789435, No. 3:18-cv-6926 (N.D. Cal. Nov. 18, 2020).

[13] Valisure, *Valisure Expands Capabilities To Test Medications For Cancer Causing Contaminants Implicated In Recent Recalls* (Cision PR Newswire May 15, 2019), https://www.prnewswire.com/news-releases/valisure-expands-capabilities-to-test-medications-for-cancer-causing-contaminants-implicated-in-recent-recalls-300812908.html.

[14] *Valisure Detects High Levels of DMF in Valsartan*, Valisure (June 13, 2019), https://www.valisure.com/blog/valisure-news/valisure-detects-high-levels-of-dmf-in-valsartan/.

[15] *Valisure Detects NDMA in Ranitidine*, Valisure (Sept. 13, 2019), https://www.valisure.com/blog/valisure-news/detection-of-ndma-in-raniditine/.

[16] *Valisure Detects High Levels of NDMA in Metformin*, Valisure (March 2, 2020), https://www.valisure.com/blog/valisure-news/valisure-detects-high-levels-of-ndma-in-metformin/.

[17] *Valisure Citizen Petition on Hand Sanitizer Products Containing Benzene Contamination and Other Significant Issues*, Valisure (March 24, 2021) https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Hand-Sanitizer-v4.14.pdf.

[18] *Valisure Detects Benzene in Sunscreen*, Valisure (May 25, 2021), https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/.

[19] FDA, *Citizen Petition from Valisure, LLC* (June 12, 2019), https://www.regulations.gov/document/FDA-2019-P-2869-0001 (citizen petition on valsartan);

*Bretholz and Valisure*

Petitioner Bretholz is an investor in Valisure, as is his brother, Dr. Adam Bretholz.[20]  While Bretholz is an attorney, he does not work for a law firm in private practice representing clients, but is instead employed by Macquarie Infrastructure and Real Estate Assets, where he is "[p]rincipally responsible for the Macquarie Infrastructure Partners series of funds, the Macquarie Insurance Dedicated Infrastructure Funds, and their associated assets."[21]

The documents already obtained by GSK through discovery show that Bretholz has been deeply involved in Valisure's efforts to coordinate and publicize its Zantac testing results.  For example, Bretholz helped his brother reach an agreement with Valisure to obtain an "investigation of ranitidine degradation in physiological conditions and any link between the pharmaceutical and carcinogenic toxins like NDMA."[22]   Bretholz and his brother were also included in

---

*Valisure Citizen Petition on Ranitidine* (Sept. 9, 2019) ("Zantac Citizen Petition"), https://www.valisure.com/wp-content/uploads/Valisure-Ranitidine-FDA-Citizen-Petition-v4.12.pdf; *Valisure Citizen Petition on Metformin* (March 2 2020), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Metformin-v3.9.pdf; *Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care Products* (May 23, 2021), https://www.valisure.com/wp-content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-After-sun-Care-Products-v9.7.pdf.

[20] *See* Non-Party Michael Bretholz, Esq.'s Responses and Objections to Defendant GlaxoSmithKline LLC's Subpoena Duces Tecum, No. 15 (Aug. 27, 2021) (Ex. 1) (admitting that "Mr. Bretholz invested in Valisure."); Email correspondence between Michael Bretholz, Adam Bretholz, Valisure Chief Communications Officer Alexandra Jirstrand, and Valisure CEO David Light (Sept. 28, 2019), VAL-BI 01442-43 (all documents cited herein and obtained in the Zantac MDL discovery attached at Ex. 2) (drafting message statement for Dr. Adam Bretholz about Zantac and disclosing that Adam Bretholz is an investor in Valisure.).

[21] *See* Declaration of Michael Breholz ¶ 4, Docket No. 3 (Sept. 1, 2021); *Michael Bretholz*, LINKEDIN (Ex. 3) (last visited 09/17/2021), www.linkedin.com/in/michael-bretholz-18a2a525.

[22] *See* Data and Analytical Services Agreement signed by David Light, CEO of Valisure and Dr. Adam Bretholz, VAL-BI 01434-37 (Ex. 2); Email correspondence between David Light, Michael Bretholz, and Adam Bretholz (Apr. 8 and 9, 2019), VAL-BI 01444-45 (Ex. 2).

communications about the drafting and submission of an article by Valisure employees and third

parties about the testing of Zantac to the New England Journal of Medicine.[23]

*Valisure's Testing and Zantac Citizen Petition*

In 2019, Valisure teamed up with individuals at Memorial Sloan Kettering Cancer Center

and Emery Pharma (which provides drug testing services to plaintiffs in litigation and whose CEO,

Ron Najafi, has been retained as a consultant by Plaintiffs' counsel in the Zantac MDL) to produce

testing of Zantac that would support Valisure's citizen petition to the FDA.  Bretholz was deeply

involved in these communications and efforts.  Also involved in coordinating and directing the

research to support the citizen petition was Gregory A. Frank, a plaintiffs' class action attorney.[24]

Valisure intended to drum-up investment dollars by supporting litigation using a multifaceted

strategy to promote its later-discredited research in the FDA citizen petition, and to develop interest

from the Department of Justice.[25]  Valisure was aware that their super-heating method of testing

███████████████████████████████████████████████████████████████████████

---

[23] *See* Email Correspondence between David Light, Dr. William Mitch, Michael Bretholz, Dr. Adam Bretholz, Dr. Lior Braunstein, Adam Clark-Joseph, Kaury Kucera, Amber Jessop, Nicola Heimbach (July 25, 26, and 30, 2019), VAL 01416 (Ex. 2) (sending and discussing draft article for submission to the New England Journal of Medicine regarding NDMA in Zantac).

[24] *See* Email Correspondence between Gregory Frank, Dr. William Mitch, Michael Bretholz, David Light, and Kaury Kucera (May 2, 6, and 7, 2019), VAL 01592-94 (Ex. 2) (discussing research on Zantac); Gregory A. Frank, Frank LLP, https://www.frankllp.com/gregory-a-frank.html.

[25] *See* Email from David Light to Ron Najafi and Neeku Nahdavian, including Kaury Kucera and Alexandra Jirstrand (March 29, 2019), VAL 01229-30 (Ex. 2); Email Correspondence between David Light to Dr. William Mitch (Apr. 23, 29, 2019), VAL 01407 (Ex. 2) (referencing a filing regarding Zantac with the U.S. Department of Justice); Email from David Light to Ron Najafi and Neeku Mahdavian, including Kaury Kucera and Alexandra Jirstrand (Mar. 29, 2019), VAL 01228-29 (Ex. 2) (stating that the report and petition would garner ███████████ in the media).

██████████[26]  The method of testing that Valisure used had never been validated for detecting and measuring NDMA in Zantac.[27]

Valisure asked Emery Pharma to validate its high-temperature findings for Zantac to add support to its citizen petition and contemporaneous press release.[28] After doing its own testing, Emery concluded that ████████████████████████████████████████████████████ ████████████████████████████████████████████████████[29] Valisure never disclosed Emery's conclusions or the fact that Emery failed to validate its analyses.

In September 2019, Valisure submitted its citizen petition to the FDA, claiming that it had uncovered very high levels of NDMA in Zantac and asking it to take Zantac off the market.[30]  The

---

[26] Email from David Light to Neeku Mahdavian, including Kaury Kucera, Alexandra Jirstrand, Neelanjan Bose, Alan Ewing, and Ron Najafi (Apr. 1, 2019), VAL 01224 (Ex. 2); *see also* Email from David Light to Ron Najafi, including Kaury Kucera, Neeku Mahdavian, Alexandra Jirstrand, Neelanjan Bose, and Alan Ewing (Apr. 16, 2019), VAL 01325 (Ex. 2); Confidential Report (R&D) by Emery Pharma, VAL 01202-04 (Ex. 2); Email from David Light to Neelanjan Bose, including Neeku Mahdavian, Kaury Kucera, Alexandra Jirstrand, Alan Ewing, and Ron Najafi (May 23, 2019), VAL 01168 (Ex. 2).

[27] Letter from FDA responding to Valisure's Citizen Petition on Ranitidine at 10 (Apr. 1, 2020), https://www.regulations.gov/document/FDA-2019-P-4281-0008 ("To be considered an appropriate analytical test, FDA recommends that the tester provide data to demonstrate that a test procedure meets proper standards of accuracy, sensitivity, specificity and reproducibility, and is suitable for its intended purpose.  FDA also recommends that a quantitative analytical method be validated for its intended use through the demonstration of certain characteristics that are applicable for all types of tests."); *see also* Email Correspondence Between David Light and Neelanjan Bose, including Neeku Mahdavian, Kaury Kucera, Alexandra Jirstrand, Alan Ewing, and Ron Najafi (May 14, 23, 2019) (Ex. 2) (Emery telling Valisure that the ████████████████); *see also generally* FDA Form 483 for Valisure LLC (May 26, 2021 to July 6, 2021) (Ex. 4) (finding multiple violations in an FDA inspection of Valisure).

[28] *See* Email Correspondence between individuals at Valisure and Emery, VAL 01216-01237 (Ex. 2); Email from David Light to Ron Najafi and Neeku Mahdavian, including Kaury Kucera and Alexandra Jirstrand (Mar. 29, 2019), VAL 1229-30 (Ex. 2) (David Light asking  Emery: ████████████████████████████████████████████).

[29] Confidential Report (R&D) by Emery Pharma, EMERY 0151-0153 (Ex. 2) (emphasis added).

[30] *See* Zantac Citizen Petition.

petition paid lip service to the possibility of the testing temperature producing excess NDMA, but reported significant NDMA formation in "biologically relevant conditions" (i.e., conditions that purportedly mimic/match the human body) to buttress its faulty results.[31]   The "biologically relevant conditions" involved incubating ranitidine with excess amount of nitrite.[32]  Of course, this does not actually buttress Valisure's testing results as the issue of whether NDMA can be formed from ranitidine *once ingested* is a separate issue from what Valisure purported to show using their faulty results (i.e., excess amount of NDMA in ranitidine products).[33]  The FDA later showed that the "biologically relevant conditions" used by Valisure were actually hundreds of times higher than the upper range of physiological conditions.[34]  Valisure further claimed that their findings under "biologically relevant conditions" were supported by a study that found elevated levels of NDMA in subjects' urine after taking Zantac.[35]  What Valisure did not disclose is that ██████

████████████████████████████████████████ and that it knew the study results were also obtained by the faulty high temperature method used by Valisure (the study was later retracted).[36]

---

[31] *See* Zantac Citizen Petition at 7.

[32] *See* Zantac Citizen Petition at 7.

[33] *See* Email from Dr. William Mitch to Katie Guggenheim of Emery Pharma (Mar. 23, 2021), MITCH 001628 (Ex. 2) (explaining that the NDMA in his urine study was an artefact of the testing mechanism and that ███████████████████████████████████████████████ ████████████████████).

[34] *See* Gao Zongming, et al., *In Vitro Analysis of N-Nitrosodimethylamine (NDMA) Formation From Ranitidine Under Simulated Gastrointestinal Conditions*, JAMA Netw Open. 2021 Jun 1;4(6):e2118253, https://pubmed.ncbi.nlm.nih.gov/34181009/.

[35] *See* Zantac Citizen Petition at 4.

[36] *See* Email from David Light to Dr. William Mitch and Dr. Teng Zeng of Stanford University (Mar. 27, 2019), VAL 01104 (Ex. 2); Confidential Agreement signed by David Light, CEO of Valisure and Dr. William Mitch, MITCH 000004-09, VAL 01097-01101 (Ex. 2); Email from David Light to Dr. William Mitch, including Kaury Kucera (Apr. 19, 2019), MITCH 001080 (Ex. 2); Email Correspondence between David Light, William Mitch, Gregory Frank, Michael

The next month, the FDA responded to Valisure's petition, stating that "the testing method used by a third-party laboratory [Valisure] uses higher temperatures [which] generated very high levels of NDMA from ranitidine products because of the test procedure. . . .  That method is not suitable for testing ranitidine because heating the sample generates NDMA."[37]   The FDA specifically said that it did not rely on Valisure's testing in evaluating Zantac because it "was inappropriate and contributed to or caused the levels of NDMA to be artificially high."[38]   While Valisure rushed to publicize its citizen petition, after this rebuke by the FDA it offered no correction and did not retract the petition.  Worse, Valisure continued in its efforts to publish its false NDMA results in a peer-reviewed journal.[39]  Emery Pharma's CEO said internally that while Valisure's petition was "



[40]  Publicly available U.S. Securities

---

Bretholz, Kaury Kucera, Dr. Lior Braunstein of Memorial Sloan Kettering Cancer Center, and Wolfgang Hinz (Apr. 12, 17, 18, and 19, 2019), MITCH 01115-16 (Ex. 2); Email from David Light to Dr. William Mitch (May 1, 2019), VAL 01050 (Ex. 2); Draft Correction Letter from Dr. William Mitch to Dr. Curtis Harris, Chief Editor, Carcinogenesis (Apr. 29, 2019), VAL 01116-17 (Ex. 2) (correcting the 2016 urine study); Email Correspondence between David Light, Dr. William Mitch, and Lior Braunstein (Dec. 4, 9, 2019, Oct. 26, 28, Nov. 4, 6, 2020), MITCH 001237-42, VAL 1491-1492 (Ex. 2).

[37] *See* U.S. FOOD & DRUG ADMINISTRATION, *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (last visited 09/17/2021), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine (Oct. 2, 2019 update).

[38] Letter from FDA responding to Valisure's Citizen Petition on Ranitidine at 10 (Apr. 1, 2020), https://www.regulations.gov/document/FDA-2019-P-4281-0008.

[39] *See* Email from Lior Braunstein to David Light, Kaury Kucera, Amber Jessop, Dr. William Mitch, Nicola Zenzola Heimbach, and Elizabeth D. Kantor (Nov. 11, 2019), MITCH 1279 (Ex. 2); Email from Daniel Lowden, Editorial Manager Journal of the American Medical Association (JAMA) Network Open to Lior Braunstein (Nov. 15, 2019), MSK 00000834 (Ex. 2) (confirming submission of article).

[40] *See* Email from Ron Najafi to and Neelanjan Bose, Ali Najafi, Eshani Nandita, and Neeku Mahdavian (Dec. 5, 2019), EMERY 1879 (Ex. 2) (emphasis added).

and Exchange Commission (SEC) filings show that about a month after it filed its Zantac citizen petition, Valisure raised $4.35 million in investments (many times more than it had ever raised before).[41]

Given the outsized importance Plaintiffs have placed on Valisure and its status as a purportedly "independent" laboratory, it is important for Defendants to get discovery that tests Valisure's potential relationships to Plaintiffs' counsel and Valisure's funders.  Valisure has not been forthcoming with this information.  To date, GSK has not obtained documents or communications regarding what, if anything, Valisure told potential investors about its business model generally or the citizen petition specifically.  GSK also has not obtained documents regarding what financial incentives Valisure may have had for conducting its testing of Zantac and for filing the citizen petition.  These documents bear directly on the credibility of Valisure's research and its potential financial bias.  GSK has a good-faith reason to believe that one of Valisure's funders, Mr. Bretholtz, also has independent information bearing on these issues in the litigation.

## **ARGUMENT**

GSK's subpoena seeks information related to Valisure's testing of Zantac — a key piece of evidence for plaintiffs in the Zantac MDL.  This information is highly relevant and GSK is entitled to obtain responsive documents to its reasonable subpoena.  Bretholz's primary argument in opposition is his self-serving claim that he serves as Valisure's lawyer and all the responsive documents are privileged.  This argument is premature as he has not produced a privilege log identifying and setting forth the basis for the documents he contends are privileged.

---

[41] *See* EDGAR Search Database, U.S. Securities and Exchange Commission, https://www.sec.gov/edgar/search/#/q=valisure.

Federal Rule of Civil Procedure 45 authorizes the use of subpoenas to obtain, among other things, documents from non-parties.  In his brief, Bretholz incorrectly refers to the "***heightened*** relevance and proportionality standard in the Rule 45 non-party context."  Bretholz Brief at 2, 20 (emphasis added).  There is no such "heightened" standard.  In reality, "[t]he scope of discovery under a Rule 45 subpoena is the same as the scope of discovery under Rule 26."  *E.g.*, *Baptiste v. Centers, Inc.*, No. 5:13-CV-71-OC-22PRL, 2013 WL 3196758, at *2 (M.D. Fla. June 21, 2013); *see also Williams v. City of Birmingham*, 323 F. Supp. 3d 1324, 1329 (N.D. Ala. 2018) ("The scope of permissible discovery with respect to a Rule 45 subpoena is that which is set forth in Fed. R. Civ. P. 26(b)(1)"); Fed. R. Civ. P. 45, advisory committee's note to 1946 amendment (". . . [T]he subpoena for documents or tangible things [has] the same scope as provided in Rule 26(b).").  Subpoenas must also allow the recipient reasonable time to comply and may not require disclosure of privileged matter or subject the recipient to undue burden.  Fed. R. Civ. P. 45(c)(3)(A).

"[A] non-party moving to quash a subpoena is in the same position as a party moving for a protective order."[42]  *E.g.*, *Indep. Mktg. Grp., Inc. v. Keen*, No. 3:11-CV-447-J-25MCR, 2012 WL 512948, at *2 (M.D. Fla. Feb. 16, 2012); *see also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. 2021 update) ("The burden of proving that a subpoena duces tecum imposes an undue burden is on the person who seeks to have it quashed as unreasonable or oppressive.").

## I.     THE DOCUMENTS SOUGHT BY GSK'S SUBPOENA ARE RELEVANT.

The documents sought by GSK are relevant to the MDL litigation.  A primary issue is whether Zantac causes cancer.  A key piece of evidence for plaintiffs' case is Valisure's Zantac

---

[42] Bretholz's alternative request for a protective order is duplicative as this Court can provide the same relief to parties in his position under Rule 45 as under Rule 26.

testing.  While the epidemiological evidence supports GSK and other defendants' view that Zantac does not increase the risk of cancer, the plaintiffs rely on Valisure's testing to show that high levels of NDMA (a potential carcinogen) were present in Zantac.  *See, e.g.*, Amended Master Personal Injury Complaint ¶¶ 285, 323-27, 329, 331, 333, 340-41, *In re: Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924, Docket No. 887 (June 22, 2020) (citing and relying upon Valisure's testing and citizen petition).  Plaintiffs also seek to advance the narrative that NDMA in Zantac was discovered by a purportedly "independent" laboratory.

GSK seeks documents related to the testing of Zantac, Valisure's citizen petition, Valisure's funding and business model, and similar topics.  Valisure and Plaintiffs themselves have put Valisure in a position of prominence in the litigation.  The Valisure story is not limited to the testing done.  Plaintiffs also have repeatedly suggested that the Defendants had a financial reason not to test their products in the way Valisure did.  At the same time, Plaintiffs' story omits that Valisure itself had a financial motive and was not simply testing ranitidine as a matter of "scientific interest" or "public health."  No serious argument can be made that the documents requested are irrelevant.  Records already obtained by GSK have led discovery to Bretholz.[43]  He may be the only source of communications with other third parties, drafts of the citizen petition and correspondence regarding Valisure and test-related funding, and Valisure's knowledge of the

---

[43] *See, e.g.*, Email correspondence between David Light, Michael Bretholz, and Adam Bretholz (Apr. 8 and 9, 2019), VAL-BI 01444-45 (Ex. 2); Email Correspondence between David Light, William Mitch, Gregory Frank, Michael Bretholz, Kaury Kucera, Dr. Lior Braunstein of Memorial Sloan Kettering Cancer Center, and Wolfgang Hinz (Apr. 12, 17, 18, and 19, 2019), MITCH 01115-16 (Ex. 2) (discussing Dr. Mitch serving as consultant for Valisure on Zantac research); Email Correspondence between David Light, Dr. William Mitch, Michael Bretholz, Dr. Adam Bretholz, Dr. Lior Braunstein, Adam Clark-Joseph, Kaury Kucera, Amber Jessop, Nicola Heimbach (July 25, 26, and 30, 2019), VAL 01416 (Ex. 2) (sending and discussing draft article for submission to the New England Journal of Medicine regarding NDMA in Zantac).

impropriety of its testing methodology.  By his own admission, his expertise is in financial services and documents relevant to Valisure funding and ranitidine testing are at the core of this MDL.

## II.   COMPLIANCE WITH GSK'S SUBPOENA IS NOT AN UNDUE BURDEN ON PETITIONER.

Bretholz provides little in the way of specifics as to why compliance would constitute an undue burden.  Instead, he leans back to his other arguments, stating that because the subpoena was improper, *any* compliance is therefore an undue burden.  Bretholz Brief at 3.

One specific objection Bretholz makes is that the subpoena would "commandeer" him to collect documents from third parties that are not in his possession, custody, or control.  Of course, GSK's subpoena does no such thing.  This argument is absurd in light of the fact that Rule 45 authorizes subpoenas only to require the production of documents and ESI "in that person's possession, custody, or control."  Fed. R. Civ. P. 45(a)(1)(A)(iii); *see also, e.g.*, *Agerbrink v. Model Serv. LLC*, No. 14CIV7841JPOJCF, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017) ("[P]arties must impose a reasonable construction on discovery requests." (quoting *Reinsdorf v. Skechers U.S.A., Inc*., 296 F.R.D. 604, 615 (C.D. Cal. 2013)).

Commandeering aside, responding to GSK's subpoena is not an undue burden.  Bretholz is an investor in Valisure and was actively involved in its successful efforts to gin up mass tort litigation over Zantac.  The credibility of Valisure's testing goes to the heart of the plaintiffs' case in the MDL and GSK and other defendants' ability to defend themselves.  It is eminently reasonable to require Bretholz to search the documents in his possession for responsive materials.

To avoid undue burden and expense on Bretholz pursuant to Rule 45(d)(1), GSK even offered to cover agreed-upon e-discovery technology vendor costs.[44]   However, Bretholz also demanded that GSK pay his counsel's fees, an unreasonable demand, especially since Mr. Bretholz's counsel is also "Of Counsel" to a law firm that advertises representation of plaintiffs in the Zantac MDL and has multiple attorneys listed on the docket appearing on behalf of plaintiffs.[45]

## III.   THE TIME LIMIT ON GSK'S SUBPOENA IS REASONABLE.

The time limit for GSK's subpoena is reasonable, both under the Rules and practicality. The subpoena requires production within twenty days "or at such other time as may be mutually agreed."  When conferring with Bretholz's counsel, GSK agreed to a total of 27 days for formal written responses and objections and said that it would consider an agreement on an extension for the actual document production if there was an agreement on the scope of production (e.g., search terms and privilege logging) and assuming Bretholz would actually produce documents.  But GSK said that if Bretholz intended to simply object to all of GSK's requests and then engage in motion practice, it would serve no purpose other than delay to grant an extension.  Depositions are fast approaching in the Zantac MDL and science-based discovery is of critical importance to the merits of the MDL.  Once ordered by this Court to produce responsive documents, GSK will remain willing to cooperatively engage with Bretholz on finding a reasonable and mutually agreeable timeframe for compliance with its subpoena.

Notably, Bretholz does not state in his brief exactly how much time would be sufficient for him to comply with the subpoena.  *See* Bretholz Brief at 18.  While he argues that he needs some

---

[44] Declaration of Sean Burstyn ¶ 10, Docket No. 2 (Sept. 1, 2021); *see also* Meet and Confer between Counsel for Michael Bretholz and the Zantac MDL Brand Defendants (Aug. 19, 2021) (counsel for GSK offered to cover agreed-upon e-discovery technology vendor costs).

[45] *See* Sean A. Burstyn, The Ferraro Firm, https://www.ferrarolaw.com/attorney-profiles/sean-a-burstyn/; Zantac, The Ferraro Firm, https://www.ferrarolaw.com/defective-drugs/zantac/.

indeterminate amount of additional time, none of the reasons he articulates are different from virtually any other party complying with a subpoena. He provides no evidence that the documents in his possession are uniquely voluminous or would take a uniquely inordinate amount of time to collect, review, and produce. He is a single custodian with a Gmail account, online storage, electronic devices, and potentially relevant paper files. While not required by the Rules, GSK offered to pay reasonable electronic discovery vendor fees and to limit production with the use of keyword search terms in order to expedite Bretholz's response time and avoid delays. The Court should reject Bretholz's time argument, especially when he proposes no alternative deadline to comply with the subpoena after serving his objections.

## IV.   GSK'S SUBPOENA DOES NOT VIOLATE RULE 45(C)(2)(A)'S 100-MILE RULE.

Bretholz argues that GSK's subpoena violates Rule 45 by requiring him to produce documents more than 100 miles from where he lives and works. Bretholz is mistaken. The subpoena permitted either a physical mailing to a Washington, D.C. law office "OR" via electronic mail, which Bretholz actually utilized when his counsel e-mailed a handful of documents after filing his motion to quash. Regardless, courts have held that the 100-mile rule of Rule 45(c)(2)(A) applies only where an individual is required to appear in person. *E.g.*, *Cartessa Aesthetics LLC v. Aesthetics Biomedical Inc*., No. CV-19-05827-PHX-DWL, 2020 WL 5846603, at *1 (D. Ariz. Oct. 1, 2020) (citing *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 713 (D.S.C. 2017) ("A number of courts have held that Rule 45(c)(2)(A)'s 100–mile boundary does not apply where, as here, the subpoenaed person is not instructed to also appear at the production location along with the requested documents."). Bretholz can comply with the subpoena by sending documents electronically or by mail or carrier service. And in the event that Bretholz would like to produce

documents in person, GSK would happily identify a location in New York City for him to do so. Bretholz's argument is without merit.

## V.     ANY LEGITIMATE INTEREST BRETHOLZ HAS IN CONFIDENTIALITY CAN BE ADEQUATELY PROTECTED BY THE ZANTAC MDL'S CONFIDENTIALITY ORDER.

Any legitimate interest Bretholz has in the confidentiality of responsive documents can be protected by the confidentiality order in place in the Zantac MDL.  Bretholz's arguments about confidential information are meritless.  *See* Bretholz Brief at 19-22.

Pretrial Order No. 26 expressly provides that third parties responding to discovery requests in the Zantac MDL can agree to be bound by and benefit from the confidentiality order.[46]  That order allows producing parties to designate documents as "confidential," "highly confidential," and "highly confidential—attorney's eyes only," with corresponding restrictions on the use of such documents.  Even assuming Bretholz can properly raise confidentiality concerns on behalf of Valisure for documents related to its business plans and finances, the protective order can protect the confidentiality of these documents.  *See, e.g.*, *Plouffe v. GEICO Gen. Ins. Co.*, No. 16-25145-CIV, 2017 WL 7796323, at *3 (S.D. Fla. Aug. 8, 2017) (denying motion to quash subpoena seeking confidential information where requesting party was not a direct competitor and agreed to enter a confidentiality agreement).  In fact, a number of third parties have produced documents in this MDL after designating them confidential pursuant to the confidentiality order.

To the extent Bretholz argues that the subpoena is uniquely improper because he is Valisure's lawyer and it asks for Valisure's confidential information, this is just a reiteration of his privilege arguments, addressed below.  Valisure itself has expressed the view that its documents

---

[46] *See* Pretrial Order #26, Confidentiality Order at 2, ¶ A(4), *In re: Zantac (Ranitidine) Products Liability Litigation*, Docket No. 780, MDL No. 2924 (S.D. Fla. June 1, 2020).

in the possession of third parties can be produced so long as they are designated as confidential.[47] In sum, third parties and defendants in the Zantac MDL have produced many records that are confidential, applying the appropriate confidentiality designation to each one.  Bretholz can do the same and any legitimate interest he has in confidentiality can be protected.

## VI.     PETITIONER'S PRIVILEGE ASSERTIONS ARE PREMATURE.

Bretholz's core argument in support of his motion to quash is that most responsive documents are privileged because he is not only a Valisure investor and consultant, but Valisure's attorney.  *See* Bretholz Brief at 8-11.  Rule 45(e)(2) sets out specific requirements for the recipient of a subpoena to make a claim for privilege.  A subpoena recipient must expressly make that claim and provide a privilege log describing the nature of the withheld documents, communications, or tangible things in a manner that will enable the parties to assess the claim.  Fed. R. Civ. P. 45(e)(2)(A).

First, GSK does not accept Bretholz's self-serving claim that he represents Valisure as an attorney at face value, and neither should this Court.  Aside from the self-serving nature of this claim — made for the first time (that GSK is aware) in a meet and confer on August 26, 2021, twenty-one days after the service of the subpoena — circumstantial evidence gives reason to doubt it.  While Bretholz is an attorney and used to practice law representing clients at a law firm, he is now a full-time employee at Macquarie, an investment bank and financial services company.  He is not a member or employee at any law firm, even on a part-time basis.  Moreover, Macquarie would not likely permit its employee to serve as an attorney to an outside company, especially

---

[47] *See* Email Correspondence between David Light and Dr. William Mitch (Apr. 1, 2021), VAL 01538 (Ex. 2) (David Light telling Dr. Mitch ████████████████████████████████████████████████████████████████████████████████████████████████

where Bretholz was supposedly acting as an attorney to Valisure in a role adverse to GSK. Macquarie Group holds over 2.9 million shares of stock in GSK and is a large institutional investor in GSK.[48]  Macquarie's Code of Conduct requires that employees not engage in conduct "that raises an actual or apparent material conflict of interest with Macquarie or its clients"[49]

Second, even if Bretholz acted as Valisure's attorney (in addition to his role as investor and advisor), this does not automatically render all responsive documents in his possession privileged.  A document "does not become privileged merely because it was sent to an attorney," nor is "a lawyer's communication is [] cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a nonlawyer."  *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379, 581 N.E.2d 1055, 1061 (1991).  Rather, "[t]he critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client."  *Id.*; *see also Skorman v. Hovnanian of Fla., Inc*., 382 So. 2d 1376, 1378 (Fla. 4th DCA 1980) ("[W]here a lawyer is engaged to advise a person as to business matters as opposed to legal matters, or when he is employed to act simply as an agent to perform some non-legal activity for a client the authorities uniformly hold there is no privilege.").  And the work product doctrine protects materials that result from "an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation."  *Ullmann v. State*, 230 Conn. 698, 714, 647 A.2d 324, 332 (1994).  GSK has a legitimate need for non-privileged documents about Bretholz's significant role as a business partner and investor in Valisure.  GSK

---

[48] *GlaxoSmithKline Institutional Ownership*, Market Beat (Sept. 13, 2021), https://www.marketbeat.com/stocks/NYSE/GSK/institutional-ownership/.

[49] Code of Conduct at 15, Macquarie (Oct. 2020), https://www.macquarie.com/assets/macq/impact/esg/policies/Code%20of%20conduct.pdf.

is not seeking to discover any legal advice he has provided, only that it be logged so that GSK can evaluate the nature of the privilege and its defensibility.

Bretholz admits that he has not produced a privilege log identifying the responsive documents he claims are privileged.  Yet he asks this Court to quash GSK's subpoena based on his claim that all or most of his documents are protected by attorney client privilege or the work product doctrine.  Leaving aside that this privilege actually belongs to Valisure, not Bretholz, "[t]he burden of establishing the applicability of the privilege rests with the party invoking it." *E.g.*, *State v. Kosuda-Bigazzi*, 335 Conn. 327, 343, 250 A.3d 617, 629 (2020) (quoting *Harrington v. Freedom of Information Comm'n*, 323 Conn. 1, 12, 144 A.3d 405, 413 (2016)).  Bretholz has not shown that any particular responsive documents are privileged or protected by the work product doctrine.  Instead, through blanket statements, he in effect tries to flip the burden to GSK. Many of the documents in his possession likely do not (or do not clearly) satisfy the requirement for protection.  For example, ***none of the Valisure communications involving Bretholz that GSK has been able to obtain thus far show any communications made for the purpose of obtaining or offering legal advice, nor do they reflect any work done in anticipation of litigation by Valisure.***

Bretholz cannot simply immunize himself from compliance by his general assertions of privilege.  Any determination at this juncture — where Bretholz has provided no privilege log setting forth the basis of privilege claims for particular documents — would be wholly premature. He should produce the documents and a privilege log for those documents claimed to be privileged. Once Bretholz produces a privilege log, GSK and Bretholz can meet and confer on the merits of particular designations and, if necessary, seek guidance from the Court.

## CONCLUSION

GSK has complied with its obligations under Rule 45, and Bretholz has not and cannot present evidence that would shield him from discovery under Rule 45.  For the reasons set forth above, GSK respectfully asks this Court to deny Bretholz's motion to quash and motion for protective order and grant GSK's motion to compel and comply with his production obligations under Rule 45.


Dated: September 20, 2021

/s/ Patrick Oot
Patrick Oot, NY #4017745
Shook, Hardy & Bacon LLP
1800 K St. NW, Suite 1000
Washington, D.C. 20006
Telephone: 202.783.8400
Facsimile: 202.783.4211
Email: oot@shb.com

Thomas J. Sheehan, NY #3938859
Shook, Hardy & Bacon LLP
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Telephone: 212.989.8844
Facsimile: 929.501.5455
Email: tjsheehan@shb.com

*Attorneys for Respondent GlaxoSmithKline LLC*

## STATEMENT REGARDING LOCAL RULE 37.2

GSK has made a good faith effort to meet and confer with Petitioner to resolve this dispute. Petitioner did not seek an informal conference with the Court, pursuant to Local Civil Rule 37.2, prior to filing his motion to quash.  GSK is filing this opposition in response to that motion, with additional relief requested in its motion to compel.   While Rule 37.2 may not apply to an opposition, GSK remains willing to participate in informal conferences with the Court should this Court deny GSK's motion to transfer this action to the underlying MDL proceeding.

*/s/ Patrick Oot*          
Patrick Oot
*Attorney for Respondent GlaxoSmithKline LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2021 a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF GLAXOSMITHKLINE LLC'S MOTION TO COMPEL MICHAEL BRETHOLZ'S COMPLIANCE WITH ITS SUBPOENA AND OPPOSITION TO MR. BRETHOLZ'S MOTION TO QUASH was electronically filed with the Clerk using the CM/ECF filing system and was served on counsel via e-mail pursuant to Pretrial Order 45 in *In Re: Zantac MDL*.

*/s/ Patrick Oot*
Patrick Oot
*Attorney for Respondent GlaxoSmithKline LLC*
